PEOPLE *v.* LUNDELL.

1. INTOXICATING LIQUORS — OPEN SALOON — EVIDENCE — SUFFICI-ENCY.

A person engaged in business in a building in which there was a saloon entered the saloon during prohibited hours to remedy a defect in a water pipe, and prevent water from escaping into the basement. After being in, he, without request, but pursuant to a pre-existing arrangement to "change off" work, swept out the saloon, and then remained a few minutes, talk-

ing with the barkeeper. *Held*, that the barkeeper, in permitting him to remain in the saloon after the time required to repair the water pipe, was keeping the saloon open contrary to law.

2. SAME—ACT OF BARKEEPER—LIABILITY OF SALOONKEEPER.

   A saloonkeeper is bound to see that his saloon is closed during the hours the law requires it to be closed, and is liable for the act of his barkeeper in keeping it open during prohibited hours.

Exceptions before judgment from Wexford; Chittenden, J. Submitted February 26, 1904. (Docket No. 201.) Decided April 5, 1904.

Erick Lundell was convicted of keeping his saloon open during prohibited hours. Affirmed.

*Sawyer & Bishop*, for appellant.

*Fred C. Wetmore*, Prosecuting Attorney, for the people.

MONTGOMERY, J. The respondent was convicted of keeping his saloon open during prohibited hours. The evidence conclusively showed that, before 6 o'clock on the morning in question, the bartender and one Peter Jacobson were in the saloon,—the barkeeper behind the bar, and Jacobson standing leaning against the bar in conversation with the barkeeper. To meet this case the defendant called Jacobson, who testified that he was employed in the business of keeping a boarding house in a portion of the building in which the saloon was located; that he discovered that the waste pipe from defendant's ice box had become clogged, and that water was flowing down into the basement; that he then went into the saloon and cleaned the pipe out; that he went in for no other purpose, but that, after being in, he, without request, swept out, and then remained and talked with the barkeeper a few minutes. This, with testimony tending to show that, under an arrangement to "change off," Jacobson had on other occasions helped to clean out, was all the

testimony offered in explanation of Jacobson's presence at the time.

The circuit judge charged, in effect, that, under these circumstances, the barkeeper, in permitting Jacobson to remain in the saloon after the time required to clean out the water pipe, was, in effect, having or keeping the saloon open contrary to law. This ruling is fully sustained by the previous decisions of this court. *People* v. *Waldvogel,* 49 Mich. 337 (13 N. W. 620); *People* v. *Crowley,* 90 Mich. 366 (51 N. W. 517). Jacobson, according to the whole testimony, was, after he had remedied the defect in the water pipe, first a volunteer assistant, and later a visitor, and in either character had no such relation to defendant's business as made it proper to permit him to remain there.

The contention that the respondent is not responsible for the act of his barkeeper in keeping his saloon open, but that the barkeeper is the only offender, has been answered too often to leave it necessary to discuss the question at any length. The court has frequently held that this statute imposes upon the keeper of a bar or saloon the affirmative duty to see that it is closed during certain hours and on holidays, and that the neglect of this duty is an offense. *People* v. *Roby,* 52 Mich. 577 (18 N. W. 365, 50 Am. Rep. 270); *People* v. *Welch,* 71 Mich. 552 (39 N. W. 747, 1 L. R. A. 385).

The conviction is affirmed.

The other Justices concurred.